# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILL MCGEE, et al., | Case No. 1:18-cv-00768-LJO-SAB |
| Plaintiffs, | ORDER FOLLOWING INFORMAL HEARING DIRECTING PARTIES TO SUBMIT A PROTECTIVE ORDER AND DIRECTING DEFENDANTS TO PRODUCE RESPONSIVE DOCUMENTS |
| v. | |
| POVERELLO HOUSE, et al., | |
| Defendants. | (ECF Nos. 10, 11) |

On April 24, 2018, Plaintiffs filed an action in the Fresno Superior Court bringing federal and state law claims, which was removed to the above entitled court on June 5, 2018. (ECF No. 1.) On October 29, 2018, the Court set a telephonic conference call with the parties to discuss a discovery dispute. (ECF No. 10.) On November 1, 2018, the parties filed a joint statement re discovery dispute outlining the contentions of the parties. (ECF No. 11.) On November 2, 2018, the Court held an informal telephonic conference call with the parties. Peter Kapetan appeared on behalf of Plaintiffs. Cynthia Lawrence appeared on behalf of Defendants. Because it was an informal discovery dispute the matter was not on the record. As discussed at the informal conference, and described below, the Court orders the parties to jointly draft and submit a protective order, and orders Defendants to produce relevant documents to Plaintiffs with certain redactions removed.

///

# I.

# BACKGROUND

## A. Complaint Allegations

Plaintiffs bring this action alleging causes of action for 1) negligent infliction of emotional distress; 2) violation of the Unruh Civil Rights Act; 3) violation of the California Fair Employment & House Act; 4) violation of the right to privacy; 5) violation of the Federal Fair Employment and Housing Act; and 6) violation of California unfair competition laws. (Compl., EFC No. 1.) Defendants Poverello House ("Poverello") and Naomi's House ("Naomi's") are homeless shelter organizations that provide housing and other services. (Compl. ¶¶ 16-17.) Poverello operates Naomi's, and Naomi's receives federal grants through the Department of Housing and Urban Development ("HUD"), in addition to additional funding from Poverello. (Compl. ¶ 17.)

Plaintiffs are all homeless woman who have sought shelter at Naomi's between June 2017 and present. (Compl. ¶ 21.) Plaintiffs allege that beginning in approximately June of 2017, a male to female transgender person identified as "D.N." was admitted to Naomi's. (Compl. ¶ 22.) D.N. dressed in female attire, but still had male genitalia. (Id.) Naomi's requires all women who stay to shower every night or risk being excluded from the shelter. (Compl. ¶ 20.) Plaintiffs allege that D.N. was allowed to observe the women when they were required to undress in the open area, and that during shower times, D.N. would repeatedly make lewd and sexually inappropriate comments to some of the Plaintiffs. (Id.) D.N. would allegedly "stare and leer at Plaintiffs while naked and make sexually harassing comments about their bodies," in addition to showing sexual pictures and/or videos of D.N., and making sexual advances on some of the Plaintiffs. (Compl. ¶ 22-23.)

Plaintiffs repeatedly complained to staff at Naomi's regarding such conduct, both verbally and in writing. (Compl. ¶ 24.) Plaintiffs were allegedly informed that they had to respect D.N.'s decision to identify as a woman, and that because Naomi's received HUD funding, there was nothing Naomi's could do. (Id.) If Plaintiffs refused to take showers with D.N., staff threatened them with expulsion, and Plaintiffs complain that Naomi's refused to take

1 appropriate disciplinary action against D.N., or make any reasonable accommodation to protect Plaintiff's rights and privacy. (Id.)

**B.      The Discovery Dispute**

The discovery dispute centers around the restrictions placed on Defendants under the Health Insurance Portability and Accountability Act ("HIPPA"), and other privacy rights, as applied to the disclosure of certain documents regarding Plaintiffs, non-party D.N., and other non-party clients of the Defendants. (Joint Statement Re Disc. Dispute, EFC No. 11.) HIPPA waivers have been signed by Plaintiffs, however names of other non-party residents at Naomi's have been redacted by Defendants because they claim they must be protected under HIPPA and other privacy rights. (Id. at 2.) Plaintiffs have requested the names of such non-party residents. (Id.) In sum, the dispute remains over two main categories of information: 1) the redacted names of the non-party residents concerning incident reports pertaining to D.N.; and 2) the production of Defendants' complete file on D.N. (Id.)

1.      <u>Plaintiffs' Position Regarding the Discovery Dispute</u>

Plaintiffs concede that Defendants may be a covered entity under HIPPA, however argue that does not mean all the information they compile is protected health information under the statute. (Id. at 3.) If Defendants' position is correct, Plaintiffs argue that Defendants could refuse to disclose any requesting entity any information regarding its residents under any circumstance, including if a crime is involved. (Id.)

Plaintiffs offered to serve D.N. with an equivalent of a Notice to Consumer (California Civil Procedure requirement), that would allow D.N. to object to the production. (Id.) Defendants refused such offer stating they would still not comply due to questions of D.N.'s mental capacity to waive such rights. (Id.) Plaintiffs therefore state Defendants would not produce the requested documents even if a HIPPA waiver was obtained. (Id.)

Plaintiffs contend a complete copy of D.N.'s file is relevant to the action. (Id.) At a minimum, Plaintiffs contend all records pertaining to complaints and corrective action taken against D.N. should be produced. (Id.) Other materials should be reviewed by the Court in camera to determine relevancy. (Id.) Plaintiffs state they would abide by any reasonable

3

protective order, and that HIPPA permits disclosure of protected health care information pursuant to court order, or when a protective order is in place. (Id.)

2.. <u>Defendants' Position Regarding the Discovery Dispute</u>

In sum, Defendants argue Plaintiffs' request for D.N.'s entire file is overbroad and contains privilege information subject to HIPPA. (Id. at 5.) D.N. is a non-party, and Defendants state there is a serious question of whether D.N. has the mental capacity to provide a waiver to Defendants regarding the information. (Id.) Defendants also contend it must comply with privacy and HIPPA protections for all current and previous residents/clients. (Id. at 4.)

HUD uses aggregate Homeless Management Information System (HMIS) data. (Id.) Because Defendants receive HUD funding, they are required to participate in the HMIS. (Id.) Defendants state they are a covered entity under HIPPA because they are required, under HUD, to participate in HMIS, and they communicate with other covered entities such as hospitals and mental health institutions about the clients' medical condition. (Id.) This includes data pertaining to disabilities, health conditions, mental health, and other information. (Id.) Defendants argue the HMIS information falls under the HIPPA guidelines and protections, stating HIPPA forbids a covered entity from sharing personal medical information without removing details that could identify the person. (Id.) Defendants argue that even the names of people who seek assistance are subject to the privilege, and cannot be disclosed unless a signed, written authorization is provided. (Id.)

If the Court requires Defendants to disclose the information in dispute, Defendants request in camera review, redactions as appropriate, and an order that Plaintiffs enter into a confidentiality agreement requiring Plaintiffs to not disclose or use the records for any purpose other than litigation, label the documents confidential, and require such confidential information to be returned or destroyed at the conclusion of litigation. (Id. at 5.)

## II.

## DISCUSSION

**A.     The Documents Sought by Plaintiffs are Directly Relevant to their Claims**

Rule 26 of the Federal Rules of Civil Procedure allows a party to obtain discovery

"regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevancy to the subject matter of the litigation "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Although relevancy is broadly defined for the purposes of discovery, it does have "ultimate and necessary boundaries." Gonzales v. Google, Inc., 234 F.R.D. 674, 680 (N.D. Cal. 2006) (citations omitted).

Plaintiffs seek incident reports concerning D.N. to be produced without redactions, in addition to the complete file on D.N. in possession of Defendants. As discussed at the informal hearing, the Court finds the information sought by Plaintiff as sufficiently relevant to the matter to warrant production by Defendants. This case involves alleged harassment and other actions by D.N. directed at Plaintiffs and other individuals who utilized the services of Defendants. The claims involve what Defendants did when confronted with these allegations, what steps they took in response to complaints about D.N., and whether they adequately protected the other residents. Therefore, the documents sought by Plaintiffs are directly relevant to prosecution of their claims.

While the information sought is relevant, third party privacy rights and HIPPA restricts Defendants' ability to produce such documents, and such issues are addressed in the next section.

**B.     A Protective Order Addresses HIPPA Restrictions and Privacy Concerns**

The Court has determined that a protective order jointly drafted by the parties will both protect the privacy interests of the affected non-party individuals, and address concerns of Defendants regarding their obligations as a covered entity under HIPPA.

The Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110

Stat. 1936, restricts health care entities and associated entities ("covered entities"), from disclosing "protected health information" ("PHI"). HIPAA's privacy provisions allow for disclosure of PHI in the course of administrative or judicial proceedings. See 45 C.F.R. § 164.512(e). A covered entity may disclose PHI expressly authorized by a court order. 45 C.F.R. § 164.512(e)(1)(i). A covered entity may also disclose PHI in response to a subpoena or discovery request not accompanied by an order if the entity receives satisfactory assurance from the party seeking the information that the party has made reasonable efforts to insure that the individual has been given notice of the request, or that the party has made reasonable efforts to secure a qualified protective order. 45 C.F.R. § 164.512(e)(1)(ii). A qualified protective order under HIPPA prohibits "the parties from using or disclosing the protected health information for any purpose other than the litigation," and "[r]equires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding." 45 C.F.R. § 164.512(1)(e)(v). Additionally, a covered entity may disclose protected health information in response to a subpoena or discovery request without satisfactory assurance from the requesting party if the disclosing party makes reasonable efforts to notify the individual or seek a qualified protective order. 45 C.F.R. § 164.512(e)(1)(vi).

In addition to the HIPPA restrictions, Federal courts generally recognize a right of privacy that can be raised in response to discovery requests. Johnson by Johnson v. Thompson, 971 F.2d 1487, 1497 (10th Cir.1992); DeMasi v. Weiss, 669 F.2d 114, 119-120 (3rd Cir.1982). Unlike a privilege, the right of privacy is not an absolute bar to discovery and courts must balance the need for the information against the claimed privacy right. Ragge v. MCA/Universal Studios, 165 F.R.D. 601, 604 (C.D. Cal. 1995) (right of privacy may be invaded for litigation purposes). Thus, the right of privacy in discovery involves a balancing of interests under federal law.

In the instant case, the Court finds, on balance, the privacy rights of D.N. are outweighed by the needs of discovery in this matter. As discussed above, this case involves alleged harassment and other actions by D.N. directed at Plaintiffs and other individuals who utilized the services of Defendants. The claims involve what Defendants did when confronted with these

allegations, what steps they took in response to complaints about D.N., and whether they adequately protected the other residents. In this regard, the incident reports, and files pertaining to D.N. are directly relevant to prosecuting and defending the claims, and the need for such information outweighs the privacy interests in such documents.

The Court has wide discretion in handling pretrial discovery. To enforce limits on discovery, parties may seek a protective order or the court may act upon its own initiative. Fed. R. Civ. P. 26(c). Under Rule 26, this Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including: "(A) forbidding the disclosure or discovery; (B) specifying terms . . . for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; [or] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Id.

Here, the Court finds that the entry of a qualified protective order will best protect the privacy interests of third parties, and satisfy Defendants obligations as a covered entity under HIPPA. Following approval of the protective order by the Court, Defendants shall produce the incident reports pertaining to D.N., and the entire file pertaining to D.N. within Defendants' possession, with all references to D.N. unredacted.

Although Plaintiffs request that the names of complainants and other clients of Defendants that are referenced in the reports be unredacted as well, the Court finds that such references to other non-parties may remain redacted at this juncture. Following production of the incident reports and files, Plaintiffs will be in a better position to determine if removal of such redactions is necessary, and may present such request at a later date, or request the Court to review such documents in camera to determine the necessity of removing such redactions.

**III.**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The parties shall submit a stipulated protective order to the Court on or before November 16, 2018;

2. Within seven (7) days after approval and entry of the protective order by the Court, Defendants shall produce to Plaintiffs the incident reports pertaining to D.N., with references to D.N. unredacted; and

3. Defendants shall produce the entire file pertaining to D.N. to Plaintiffs, with references to D.N. unredacted, on November 30, 2018, but not before such date.

IT IS SO ORDERED.

Dated: **November 5, 2018**

UNITED STATES MAGISTRATE JUDGE