# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILL MCGEE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>POVERELLO HOUSE, et al.,<br><br>    Defendants. | Case No. 1:18-cv-000768-LJO-SAB<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL PLAINTIFFS' AMENDED RESPONSES TO REQUESTS FOR ADMISSION<br><br>ORDER DENYING DEFENDANTS' REQUEST FOR MONETARY SANCTIONS<br><br>ORDER DENYING PLAINTIFFS' REQUEST FOR SANCTIONS<br><br>(ECF Nos. 25, 29, 32, 33) |

Currently before the Court is Defendants Poverello House's ("Poverello") and Naomi's House's ("Naomi's") (collectively "Defendants") motion to compel Plaintiffs Jill Mcgee, Lacey Hoxsie, Lydia Carranza, Noadiah Riaz, Tracey Stroud, Christine D'Ambrosi, and Sharon Wade (collectively "Plaintiffs") to serve amended responses to Defendants' requests for admissions, set one. (ECF No. 25.) The Court heard oral argument on June 26, 2019. (ECF No. 33.) Peter Kapetan appeared on behalf of Plaintiffs and Brian Plummer appeared on behalf of Defendants. Having considered the joint statement, moving and opposition papers, the declarations and exhibits attached thereto, arguments presented at the June 26, 2019 hearing, as well as the Court's file, the Court issues the following order.

///

1

# I.

# BACKGROUND

## A. The Allegations in the Operative Complaint

On April 24, 2018, Plaintiffs filed this action in the Fresno Superior Court bringing federal and state law claims, which was removed to the above entitled court on June 5, 2018. (ECF No. 1.) Plaintiffs bring causes of action for: (1) negligent infliction of emotional distress; (2) violation of the Unruh Civil Rights Act; (3) violation of the California Fair Employment & House Act; (4) violation of the right to privacy; (5) violation of the Federal Fair Employment and Housing Act; and (6) violation of California unfair competition laws. (Compl., EFC No. 1 at 5.)[1] Defendants run homeless shelters that provide housing and other services. (Compl. ¶¶ 16-17.) Poverello operates Naomi's House, and Naomi's House receives federal grants through the Department of Housing and Urban Development ("HUD"), in addition to additional funding from Poverello. (Compl. ¶ 17.)

Plaintiffs are homeless woman who have sought shelter at Naomi's between June 2017 and present. (Compl. ¶ 21.) Plaintiffs allege that beginning in approximately June of 2017, a male to female transgender person identified as "D.N." was admitted to Naomi's. (Compl. ¶ 22.) D.N. dressed in female attire, but still had male genitalia. (Id.) Naomi's requires all women who stay to shower every night or risk being excluded from the shelter. (Compl. ¶ 20.) Plaintiffs allege that D.N. was allowed to observe the women when they were required to undress in the open area, and that during shower times, D.N. would repeatedly make lewd and sexually inappropriate comments to some of the Plaintiffs. (Id.) D.N. would allegedly "stare and leer at Plaintiffs while naked and make sexually harassing comments about their bodies," in addition to showing sexual pictures and/or videos of D.N., and making sexual advances on some of the Plaintiffs. (Compl. ¶ 22-23.)

Plaintiffs allege they repeatedly complained to staff at Naomi's regarding such conduct, both verbally and in writing. (Compl. ¶ 24.) Plaintiffs were informed that they had to respect

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

D.N.'s decision to identify as a woman, and that because Naomi's received HUD funding, there was nothing Naomi's could do. (Id.) If Plaintiffs refused to take showers with D.N., staff threatened them with expulsion, and Plaintiffs complain that Naomi's refused to take appropriate disciplinary action against D.N. or make any reasonable accommodation to protect Plaintiffs' rights and privacy. (Id.)

### B. The Discovery Dispute

On May 28, 2019, Defendants filed a motion to compel Plaintiffs' amended responses to requests for admissions, set one, numbers 13, 21, 22, 30, 31, 45, 52, 53, 54, 55, 56, 57, 62, 63, 78, 79, and 119, along with a request for monetary sanctions against Plaintiffs' attorney of record. (ECF No. 25.) On June 7, 2019, Plaintiffs' counsel Peter Kapetan filed a declaration in opposition of Defendants' monetary sanctions request and in support of Plaintiffs' request for monetary sanctions. (ECF No. 26.) On June 19, 2019, pursuant to Local Rule 251, the parties filed a joint statement re discovery disagreement. (Joint Statement Re Discovery Disagreement ("JS"), ECF No. 32.)

While the discovery dispute originally encompassed Plaintiffs' responses to Defendants' requests for production, interrogatories, and requests for admission, through the parties' meet and confer efforts, the instant dispute now only concerns seventeen requests for admission which Defendants are moving to compel amended responses to. (JS 2-3.) Plaintiffs objected to requests for admission 13, 21, 22, 30, 31, 45, 52, 53, 54, 55, 56, 57, 62, 63, 78, 79, and 119 on various grounds, including that the requests are vague and ambiguous, that the requests call for speculation, that the requests call for a legal conclusion, or that they call for a medical opinion. (JS 5.)[2] Plaintiffs denied each of the requests for admission based on the proffered objections. (Id.)

///
///
///

---

[2] Defendants jointly propounded identical sets of requests for admission, set one, on each of the named Plaintiffs, and thus the parties' arguments and the Court's ruling concerning the contested responses shall apply to each of the Defendants' requests for admissions to each of the respective Plaintiffs. (JS 5.)

3

# II.
# LEGAL STANDARD

Rule 26, as recently amended, provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1).

"A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1). "Each matter must be separately stated." Fed. R. Civ. P. 36(a)(2). If a responding party does not admit a matter, "the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). If a matter is denied, the "denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Id. A responding party may object to a request if they state the ground for the objection in the response, but the "party must not object solely on the ground that the request presents a genuine issue for trial." Fed. R. Civ. P. 36(a)(5). The requesting party may then move the court to determine the sufficiency of an answer or objection. Fed. R. Civ. P. 36(a)(6). The court must order that an answer be served unless it finds an objection justified. Id. "On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." Id.

Motions to compel are governed by Federal Rule of Civil Procedure 37, which states, in pertinent part:

> **(a) Motion for an Order Compelling Disclosure or Discovery.**
> **(1)** *In General*. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.

> The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37. Rule 37 states that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

If a motion to compel discovery is granted, Rule 37(a)(5)(A) requires a court to order the "party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). If the motion is denied, the court must "require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," however the court "must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). Where the motion is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

## III.

## DISCUSSION

The Court now turns to the requests for admission that are the subject of Defendants' motion to compel.

### A. Request for Admission No. 13

Defendants' Request for Admission 13: Admit that you were never forced or coerced by any DEFENDANT to be at and/or stay at NAOMI'S HOUSE at any time.

Plaintiffs' Response to Request 13: Plaintiff objects to this Request for Admission on the grounds that it is vague and ambiguous as to the term "forced or coerced" and the term "at and/or

stay at." Therefore, based on said objection, Plaintiff denies.

**Court's Ruling**: Plaintiffs' objection as to vague or ambiguous language is overruled. Plaintiffs' argument that Defendants may have threatened expulsion from the shelter if Plaintiffs continued to complain about D.N's behavior or refer to D.N. in the masculine, does not prevent Plaintiffs from answering the request for admission in the form it is currently in regarding whether Defendants forced Plaintiffs to remain at the shelter. See U.S. ex rel. Englund v. Los Angeles Cty., 235 F.R.D. 675, 684 (E.D. Cal. 2006) ("When the purpose and significance of a request are reasonably clear, courts do not permit denials based on an overly-technical reading of the request."). In the joint statement, Plaintiffs argue the request is vague and ambiguous because it is compound and conjunctive. Plaintiffs did not object that the request was compound and conjunctive at the time Plaintiffs served their responses, and although the request is arguably compound, the Court does not find the request impermissibly vague and ambiguous because of such phrasing. See Clay v. Cytosport, Inc., No. 15-CV-00165-L (DHB), 2016 WL 11523590, at *5 (S.D. Cal. Aug. 16, 2016) ("To the extent the requests are compound, Defendant can explain the scope of its admission or denial in its responses."). "[I]t is not ground for objection that the request is 'ambiguous' unless so ambiguous that the responding party cannot, in good faith, frame an intelligent reply," and parties "should 'admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted.' " U.S. ex rel. Englund v. Los Angeles Cty., 235 F.R.D. 675, 685 (E.D. Cal. 2006) (quoting Marchand v. Mercy Med. Ctr., 22 F.3d 933, 938 (9th Cir. 1994)).

Accordingly, Defendants' motion to compel a response to Defendants' request for admission number 13 is **GRANTED**.

**B.     Requests for Admissions Nos. 21, 52, 53, 54, 55, 56, and 57**

Defendants' Request for Admission 21: Admit that NAOMI'S HOUSE is a female-only housing facility.

Defendants' Request for Admission 52: Admit that you never complained to DEFENDANTS at any time about having to be nude in front of and/or in the presence of other persons with female genitalia.

6

1     <u>Defendants' Request for Admission 53</u>: Admit that you never complained to DEFENDANTS at any time about having to shower in and around persons with female genitalia.

    <u>Defendants' Request for Admission 54</u>: Admit that you never complained to DEFENDANTS at any time about being looked and/or stared at by persons with female genitalia.

    <u>Defendants' Request for Admission 55</u>: Admit that you never complained to DEFENDANTS at any time about any comments made about your body by any other person with female genitalia.

    <u>Defendants' Request for Admission 56</u>: Admit that at all times relevant to your claims in this lawsuit, you observed other persons with female genitalia nude in DEFENDANTS' changing and shower areas.

    <u>Defendants' Request for Admission 57</u>: Admit that at all times relevant to your claims in this lawsuit, you were present in areas on DEFENDANTS' property where there were persons with female genitalia that were fully or partially nude.

    <u>Plaintiffs' Response to Requests 21, 52, 53, 54, 55, 56, and 57</u>: Plaintiff objects to this Request for Admission on the grounds that it is vague and ambiguous as to the term "female." Therefore, based on said objection, Plaintiff denies.

    **Court's Ruling**: Plaintiffs' objections to Defendants' requests for admission numbers 21 and 52-57 center over a dispute over the definition of the term "female." Plaintiffs' objection to request number 21 as vague and ambiguous is sustained as the Court finds the term "female" in relation to the shelter being a "female-only facility" is vague and ambiguous as phrased and would require Plaintiffs to speculate as to Defendants' own policies concerning a term in dispute between the parties. See <u>Carmichael Lodge No. 2103, Benevolent & Protective Order of Elks of U.S. of Am. v. Leonard</u>, No. CIVS072665LKKGGH, 2009 WL 1118896, at *5 (E.D. Cal. Apr. 23, 2009) ("A party, however, is not required to speculate about a request that contains genuinely vague or ambiguous statements."). Accordingly, Defendants' motion to compel a response to Defendants' request for admission number 21 is **DENIED**.

    However, Plaintiffs' objections to the term "female" being vague and ambiguous in the

context of the term "female genitalia" in relation to gender identity, are overruled as to requests 52-57. During the meet and confer process, Defendants proposed the following definition of "female":

> **Female**: A woman or a girl; an individual of the sex that is typically capable of bearing young or producing eggs; or a person who identifies as a woman or a girl, regardless of the sex assigned to that person at birth and regardless of the person's perceived gender identity. Perceived gender identity means the gender with which a person is perceived to identify based on that person's appearance, behavior, expression, other gender related characteristics, or sex assigned to the individual at birth or identified in documents.

(JS 11-12.) The Court does not conclude one way or another whether this is the correct or standard definition for a "female" for all purposes,[3] however, if the responding party finds a term vague, and the propounding party proposes a definition, although the responding party may disagree with the definition, that does not mean the term as defined for purposes of the discovery request is vague and ambiguous. The Court is not holding that the parties must use this definition, but finds it is not vague and ambiguous for the purposes of this discovery.

Although this definition may require Plaintiffs to respond to the requests for admission in a qualified way or by incorporating their understanding of the definition as applied to their personal experience and the unique issues involved in this case, the term or proposed definition is not so vague or ambiguous that Plaintiffs cannot provide a substantive response to the request. Plaintiffs expressed concern at the hearing that using this definition of female in relation to the term genitalia is problematic because D.N. is considered by Defendants to be a female under the law and regulations applicable to the shelter, and D.N. allegedly has male genitalia (a penis), and

---

[3] See, e.g., Johnston v. Univ. of Pittsburgh of Com. Sys. of Higher Educ., 97 F. Supp. 3d 657, 673 (W.D. Pa. 2015) ("This case, like other cases involving alleged discrimination against transgender individuals, raises important, but difficult, questions of what is sex and what is gender, what are the differences between sex and gender, and to what extent are sex and gender synonymous or interchangeable for purposes of federal statutes such as Title IX. Black's Law Dictionary defines "sex" as "[t]he sum of the peculiarities of structure and function that distinguish a male from a female organism; gender." Black's Law Dictionary, SEX (10th ed.2014). Black's also uses the terms "sex discrimination" and "gender discrimination" interchangeably, defining "sex discrimination" as "[d]iscrimination based on gender," but also noting: "The terminology is gradually shifting. Increasingly in medicine and sociology, *gender* is distinguished from *sex. Gender* refers to the psychological and societal aspects of being male or female; *sex* refers specifically to the physical aspects." Black's Law Dictionary, DISCRIMINATION (10th ed.2014) . . . This Court will not attempt to sort out this perplexing difference in definitions. However, the Court notes that, regardless of the interplay between the two concepts, there is a distinction between birth sex and gender identity."); see also supra note 4.

1  thus it may be unclear under this definition whether D.N. can be considered to have female
2  genitalia. While the term "female" as defined allows a more subjective view of whether a person
3  is a female depending on the chosen gender identity of the individual, the term "female genitalia"
4  is a clear physical characteristic, or, using a term incorporated in the definition above, a "gender
5  related characteristic." At the hearing, Plaintiffs' counsel was more comfortable in the ability to
6  answer the requests for admission if the term "female genitalia" was based on the physical sex
7  attributes rather than the gender identity aspect. Even if there are particular qualifications
8  Plaintiffs may have to state given their understanding of the request and their personal
9  knowledge and experience, the request is not "so ambiguous that the responding party cannot, in
10 good faith, frame an intelligent reply," and Plaintiffs "should 'admit to the fullest extent possible,
11 and explain in detail why other portions of a request may not be admitted.' " U.S. ex rel.
12 Englund v. Los Angeles Cty., 235 F.R.D. 675, 685 (E.D. Cal. 2006) (quoting Marchand v. Mercy
13 Med. Ctr., 22 F.3d 933, 938 (9th Cir. 1994)).

Accordingly, Defendants' motion to compel a response to Defendants' requests for admission numbers 52, 53, 54, 55, 56, and 57 is **GRANTED**.

**C.     Request for Admission No. 22**

<u>Defendants' Request for Admission 22</u>: Admit that at all times relevant to your claims in this lawsuit, NAOMI HOUSE was a first-come, first serve facility.

<u>Plaintiffs' Response to Request 22</u>: Plaintiff objects to this Request for Admission on the grounds that it calls for speculation. Therefore, based on said objection, Plaintiff denies.

**Court's Ruling**: Plaintiffs' objection that this request improperly calls for speculation is sustained. Although Defendants are correct that a request for admission can relate to the responding party's opinion as to facts or application of law to facts, this request does not ask for the responding party's opinion but rather seeks an admission regarding the shelter's own practice and procedure. Further, although Plaintiffs may have had some general knowledge about the shelter's policies and procedures, that does not equate to them necessarily having knowledge about the parameters or application of this specific policy during the time stated in the request. Although a party may respond by claiming an inability to admit or deny based on a lack of

1 sufficient information after a reasonable inquiry, such inquiry is "limited to persons and
2 documents within the responding party's control . . . [and] does not require the responding party
3 to interview or subpoena records from independent third parties in order to admit or deny." U.S.
4 ex rel. Englund v. Los Angeles Cty., 235 F.R.D. 675, 685 (E.D. Cal. 2006). Thus, although
5 Plaintiffs could have stated an inability to respond after a reasonable inquiry, their objection
6 based on speculation is, practically speaking, essentially the same response.

7 Accordingly, Defendants' motion to compel a response to Defendants' request for
8 admission number 22 is **DENIED**.

### D. Request for Admission No. 30

Defendants' Request for Admission 30: Admit that at all times relevant to the claims made in your complaint, D.N. was a TRANSGENDER PERSON who identified as a female.

Plaintiffs' Response to Request 30: Plaintiff objects to this Request for Admission on the grounds that it calls for speculation. Plaintiff further objects on the grounds that it calls for a legal conclusion. Plaintiff further objects on the grounds that it calls a medical opinion [sic]. Plaintiff further objects on the grounds that it is vague and ambiguous as to the term "female." Therefore, based on said objection, Plaintiff denies.

**Court's Ruling**: As the Court found above, the term "female" is not ambiguous in terms of gender identity and thus such objection is overruled. Plaintiffs' other objections are overruled and they "should 'admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted.' " U.S. ex rel. Englund v. Los Angeles Cty., 235 F.R.D. 675, 685 (E.D. Cal. 2006) (quoting Marchand v. Mercy Med. Ctr., 22 F.3d 933, 938 (9th Cir. 1994)). If Plaintiffs do not have sufficient information, they can respond by claiming an inability to answer based on lack of information. Fed. R. Civ. P. 36(a); U.S. ex rel. Englund v. Los Angeles Cty., 235 F.R.D. 675, 684–85 (E.D. Cal. 2006).

Accordingly, Defendants' motion to compel a response to Defendants' request for admission number 30 is **GRANTED**.

### E. Request for Admission No. 31

Defendants' Request for Admission 31: Admit that at all times relevant to your claims in

1 this lawsuit, D.N. dressed in female clothing.

2 <u>Plaintiffs' Response to Request 31</u>: Plaintiff further objects on the grounds that it is vague and ambiguous as to the term "female." Plaintiff further objections on the grounds that it calls for speculation. Therefore, based on said objection, Plaintiff denies.

**Court's Ruling**: Plaintiffs' objections as to speculation, and as to the term "female" being vague and ambiguous in the context of whether clothing is "female" or not, is sustained. Common clothing worn by both females and males, such as jeans and a t-shirt, can not be readily or clearly distinguished as "female clothing" or "male clothing," and thus this request as phrased is ambiguous, despite the fact that Plaintiff's complaint may have used the term "female attire." Plaintiffs' objection that the request calls for speculation is also sustained. The Court notes that the Plaintiffs provided responses to request for admission number 32, which Defendants do not move to compel on, which was very similar in that it asked Plaintiffs to "[a]dmit that at all times relevant to your claims in this lawsuit, you never observed D.N. dressed in men's clothing." Such qualification in request number 32 that asks for an admission concerning the responding party's observations alleviates part of the problem of speculation, although arguably the request would have a similar vague and ambiguous problem concerning the term "men's clothing."

Accordingly, Defendants' motion to compel a response to Defendants' request for admission number 31 is **DENIED**.

**F.    Request for Admission No. 45**

<u>Defendants' Request for Admission 45</u>: Admit that DEFENDANTS' requirement that each person staying at NAOMI'S HOUSE take a shower each day that person stayed at NAOMI'S HOUSE was a reasonable requirement.

<u>Plaintiffs' Response to Request 45</u>: Plaintiff objects to this Request for Admission on the grounds that it is vague and ambiguous as to the term "reasonable requirement." Plaintiff further objects on the grounds that it calls for speculation. Therefore, based on said objections, Plaintiff denies.

**Court's Ruling**: Plaintiffs' objections that the term "reasonable requirement" is vague and ambiguous and that the request calls for speculation are sustained. This request requires the

1  responding party to speculate as to whether the policy is reasonable under all circumstances, and
2  also speculate as to what is reasonable to who and under what circumstances. It does not ask
3  whether it was reasonable for the responding party, or whether the responding party believed it
4  was reasonable. See Carmichael Lodge No. 2103, Benevolent & Protective Order of Elks of
5  U.S. of Am. v. Leonard, No. CIVS072665LKKGGH, 2009 WL 1118896, at *5 (E.D. Cal. Apr.
6  23, 2009) ("A party, however, is not required to speculate about a request that contains genuinely
7  vague or ambiguous statements.").

Accordingly, Defendants' motion to compel a response to Defendants' request for admission number 45 is **DENIED**.

**G.    Requests for Admission Nos. 62 & 63**

Defendants' Request for Admission 62: Admit that at no time was POVERELLO HOUSE your landlord.

Defendants' Request for Admission 63: Admit that at no time was NAOMI's HOUSE your landlord.

Plaintiffs' Response to Requests 62 & 63: Plaintiff objects to this Request for Admission on the grounds that it is vague and ambiguous as to the term "landlord." Plaintiff further objects on the grounds that it calls for a legal conclusion. Therefore, based on said objection, Plaintiff denies.

**Court's Ruling**: Plaintiffs' objections are sustained. The term landlord has various definitions depending on specific circumstances, and the legal definition is one that is constantly evolving in the modern economy. See Carmichael Lodge No. 2103, Benevolent & Protective Order of Elks of U.S. of Am. v. Leonard, No. CIVS072665LKKGGH, 2009 WL 1118896, at *5 (E.D. Cal. Apr. 23, 2009) ("A party, however, is not required to speculate about a request that contains genuinely vague or ambiguous statements.").

Accordingly, Defendants' motion to compel a response to Defendants' requests for admission numbers 62 & 63 is **DENIED**.

**H.    Requests for Admission Nos. 78 & 79**

Defendants' Request for Admission 78: Admit that persons with female genitalia

intruded into your zone of privacy during your stay(s) at NAOMI's HOUSE.

Defendants' Request for Admission 79: Admit that you never complained to DEFENDANTS at any time about having to be nude in front of and/or in the presence of other persons with female genitalia.

Plaintiffs' Response to Requests 78 & 79: Plaintiff objects to this Request for Admission on the grounds that it is vague and ambiguous as to the term "female" and "zone of privacy." Therefore, based on said objection, Plaintiff denies.

**Court's Ruling**:

As the Court found above, the term "female" in relation to genitalia is not vague and ambiguous and such objection is overruled. The term "zone of privacy," while admittedly something that is perhaps unique to each individual, is not so vague and ambiguous that the Plaintiffs cannot form an adequate response. Plaintiffs used the term "zone of privacy" in their complaint in alleging that D.N. "intentionally intrude[d] into Plaintiffs' zone of privacy." (Compl. ¶ 39.) Given this, it appears reasonable that Plaintiffs can respond to the request incorporating their understanding of the term as applied to them, as the request itself states "your zone of privacy." Plaintiffs "should 'admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted.' " U.S. ex rel. Englund v. Los Angeles Cty., 235 F.R.D. 675, 685 (E.D. Cal. 2006) (quoting Marchand v. Mercy Med. Ctr., 22 F.3d 933, 938 (9th Cir. 1994)).

Accordingly, Defendants' motion to compel a response to Defendants' requests for admission numbers 78 & 79 is **GRANTED**.

**I.     Request for Admission No. 119**

Defendants' Request for Admission 119: Admit that you knew that D.N. wanted to be your friend.

Plaintiffs' Response to Request 119: Plaintiff objects to this Request for Admission on the grounds that it calls for speculation. Therefore, based on said objection, Plaintiff denies.

**Court's Ruling**: At the Court's hearing on the motion, Defendants' withdrew their motion to compel a response to request for admission number 119. Accordingly, Defendants'

13

motion to compel a response to request for admission number 119 is **WITHDRAWN**.

### J. The Parties' Requests for Sanctions are Denied

Here, where a motion to compel is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). "The appropriateness of a discovery sanction is within the broad discretion of the court." Johnson v. Sisodia, No. 1:12-CV-02044-SAB PC, 2015 WL 1746553, at *2–3 (E.D. Cal. Apr. 16, 2015) (citing Von Brimer v. Whirlpool Corp., 536 F.2d 838, 844 (9th Cir.1976)).

Defendants request $8,794.50 in sanctions based on a total of 45.1 hours billed at a rate of $195.00 per hour. (Mot. 4-5.) Defense counsel states she "spent 17.9 hours drafting the Joint Statement Re Discovery Dispute, meeting and conferring with Plaintiffs' counsel regarding the Joint Statement and preparing the Notice of Motion and Motion to Compel . . . and this Affidavit." (Mot. 4.) Defense counsel also states she "spent 27.2 hours meeting and conferring with and providing additional clarification to Plaintiffs' counsel regarding the discovery." (Mot. 4-5.) Initially, the Court finds such request excessive on its face in light of the fact the discovery dispute as presented in the motion to compel has been reduced down to now only involve seventeen requests for admission, the majority of which involve a similar dispute over the term "female," a dispute the Court finds justified given the complexities and evolving issues involved in this case. Plaintiffs' counsel's request appears a bit more reasonable on its face in stating he "conservatively expended 10 hours meeting and conferring, and responding to the present dispute involving the 17 requests for admission," in his request for a total of $3,000.00 based on an hourly rate of $300.00. (Opp'n 6.)

The Court finds it significant that the parties did in fact resolve a substantial part of the discovery dispute through the meet and confer process, including completely resolving all disputes concerning the Defendants' requests for production and interrogatories. The Court notes that Plaintiffs' initial objections to the number of requests for admission resulted in Defendants reducing the total number of requests for admission by approximately one third. As described in the parties' joint statement, Defendants had originally propounded 123 requests for

admission on each of the nine Plaintiffs, thus propounding a total of 1107 requests for admission. (JS 3-4.) Through Plaintiffs' objection and the parties' meet and confer efforts, Defendants withdrew 42 of the 123 requests, or approximately 34% of the originally propounded requests for admission. (JS 4.) By the time the instant motion was brought, the parties had reduced the original dispute down to only seventeen of the remaining eighty-one requests for admission. The Court finds that overall, both the Plaintiffs' and Defendants' arguments were meritorious or justified, and in good faith given the issues involved.

Upon consideration of all of the circumstances, including the nature of the requests for admission, the nature of Plaintiffs' objections, and the results of the meet and confer efforts, the Court finds sanctions unwarranted at this time. See Eclipse Grp. LLP v. Target Corp., No. 15CV1411-JLS (BLM), 2017 WL 2231316, at *13 (S.D. Cal. May 19, 2017); Anderson v. Hansen, No. 1:09-CV-01924-LJO, 2012 WL 4049979, at *9 (E.D. Cal. Sept. 13, 2012); McNeil v. Hayes, No. 1:10-CV-01746-AWI, 2013 WL 5954861, at *2 (E.D. Cal. Nov. 7, 2013). Given the particularly complicated and evolving legal issues involving sex and gender identity that are involved in this case,[4] the Court cannot fault either parties' attorneys for their zealous advocacy

---

[4] See G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd., 822 F.3d 709, 720–21 (4th Cir. 2016) ("We conclude that the regulation is susceptible to more than one plausible reading because it permits both the Board's reading—determining maleness or femaleness with reference exclusively to genitalia—and the Department's interpretation—determining maleness or femaleness with reference to gender identity."), vacated and remanded, 137 S. Ct. 1239, 197 L. Ed. 2d 460 (2017); Johnston v. Univ. of Pittsburgh of Com. Sys. of Higher Educ., 97 F. Supp. 3d 657, 673 (W.D. Pa. 2015) ("This case, like other cases involving alleged discrimination against transgender individuals, raises important, but difficult, questions of what is sex and what is gender, what are the differences between sex and gender, and to what extent are sex and gender synonymous or interchangeable for purposes of federal statutes . . . This Court will not attempt to sort out this perplexing difference in definitions. However, the Court notes that, regardless of the interplay between the two concepts, there is a distinction between birth sex and gender identity."); Duronslet v. Cty. of Los Angeles, 266 F. Supp. 3d 1213, 1222–23 (C.D. Cal. 2017) (the change in judicial approach to federal sex discrimination statutes since *Holloway* requires a fresh examination of the appropriate level of scrutiny for transgender discrimination claims under the Equal Protection Clause . . . *Holloway* itself appeared to accept that future developments in our understanding of transgenderism would require such a reexamination. That is, the court noted that there was substantial uncertainty among experts surrounding the 'origin and development of transsexualism.' "); Adams by & through Kasper v. Sch. Bd. of St. Johns Cty., Fla., 318 F. Supp. 3d 1293, 1321 (M.D. Fla. 2018) ("Title IX does not define the term 'sex,' nor do its regulations. There is no Eleventh Circuit or Supreme Court authority directly on point. Adams argues the term 'sex' includes gender identity, whereas the School Board contends the term 'sex' means 'biological sex.' Given the lack of definition within the statute or regulation, and recognizing that a number of courts have struggled with this exact question, this Court finds the term 'sex' as used in Title IX is ambiguous as applied to transgender students."); Kastl v. Maricopa Cty. Cmty. Coll. Dist., No. CIV.02-1531PHX-SRB, 2004 WL 2008954, at *2 (D. Ariz. June 3, 2004) ("Defendant is careful not to admit that Plaintiff is biologically female. It contends that statements that Plaintiff was born with male genitalia and that Plaintiff is biologically female conflict such that no factfinder could render a verdict in favor of Plaintiff. Plaintiff argues, however, that designation as a biological female and possession of male genitalia are not mutually

in trying to, in the Court's opinion, resolve legitimate difficulties relating to these issues. See Mount Hope Church v. Bash Back!, 705 F.3d 418, 426 (9th Cir. 2012) (stating that overuse of Rule 11 sanctions on "may chill attorney's enthusiasm and creativity, in turn impeding both a tribunal's decision-making process and the creation of new case law.")

Accordingly, both Defendants' and Plaintiffs' requests for sanctions are **DENIED**.

## IV.

## CONCLUSION AND ORDER

Based on the foregoing, Defendants' motion to compel Plaintiffs to provide amended responses to Defendants' requests for admission is GRANTED IN PART and DENIED IN PART. Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to compel is GRANTED as to Defendants' requests for admission, set one, numbers 13, 30, 52, 53, 54, 55, 56, 57, 78, and 79;

2. Plaintiffs shall file amended responses to requests for admission, set one, numbers 13, 30, 52, 53, 54, 55, 56, 57, 78, and 79, on or before August 7, 2019;

3. Defendants' motion to compel is DENIED as to Defendants' requests for admission, set one, numbers 21, 22, 31, 45, 62, and 63;

4. Defendants' motion to compel a response to request for admission, set one, number 119 is WITHDRAWN; and

5. The parties' requests for sanctions are DENIED.

IT IS SO ORDERED.

Dated: **June 28, 2019**

UNITED STATES MAGISTRATE JUDGE

---

exclusive states. The Court cannot say that there is no set of facts which might support this conclusion. Medical evidence suggests that the appearance of genitals at birth is not always consistent with other indicators of sex, such as chromosomes."); Johnston v. Univ. of Pittsburgh of Com. Sys. of Higher Educ., 97 F. Supp. 3d 657, 671 (W.D. Pa. 2015) ("Thus, while Plaintiff might identify his *gender* as male, his *birth sex* is female. It is this fact—that Plaintiff was born a biological female, as alleged in the complaint—that is fatal to Plaintiff's sex discrimination claim. Regardless of how gender and gender identity are defined, the law recognizes certain distinctions between male and female on the basis of birth sex.").