**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JILL McGEE,** *et al.*, | **1:18-cv-00768-LJO-SAB** |
| **Plaintiffs,** | |
| **v.** | **MEMORANDUM DECISION AND ORDER RE DEFENDANTS POVERELLO HOUSE AND NAOMI'S HOUSE MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (ECF No. 35)** |
| **POVERELLO HOUSE,** *et al.*, | |
| **Defendants.** | |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno

Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. <u>INTRODUCTION</u>

Plaintiffs Jill McGee, Lydia Carranza, Tracey Stroud, and Sharon Wade (collectively, "Plaintiffs") raise claims under the Unruh Civil Rights Act (California Civil Code § 51), California Fair Employment and Housing Act, Federal Fair Employment and Housing Act, and claims for negligent infliction of emotional distress and the right to privacy.[1] Defendants Poverello House and Naomi's House (collectively, "Defendants") filed a motion for partial judgment on the pleadings to dismiss the Unruh Civil Rights Act claim. ECF No. 35.

The Court has determined the motion for partial judgment on the pleadings is suitable for decision based on the papers under Local Rule 230(g). For the reasons stated below, Defendants' motion is GRANTED with leave to amend.

## III. <u>FACTUAL BACKGROUND</u>

Defendant Poverello House "is an organization that provides meals, social services, and temporary shelter to people in the Fresno area." ECF No. 1 ¶ 16. Defendant Naomi's House is a "24 bed overnight shelter for single, homeless women." *Id.* ¶ 17. Plaintiffs believe Poverello House operates Naomi's House. *Id.* ¶ 16. Poverello House and Naomi's House are 501(c)(3) nonprofit corporations. *See* ECF No. 4-2 at 1. "The overwhelming majority of women who receive services from Defendant Poverello [House] and . . . Naomi's House are very vulnerable and in crisis." *Id.* ¶ 19. Poverello House and Naomi's House provide a "gentle haven of healing for homeless women." *Id.* ¶ 17. To carry out

---

[1] On October 4, 2019, the Court granted the parties' stipulation to dismiss the California Unfair Competition Law claim (Cal. Bus. & Prof. Code § 17200, *et seq.*). ECF No. 45.

their "mission to provide shelter, services, and general support to the area's homeless population, Defendants receive federal funding including grants from the U.S. Department of Housing and Urban Development ('HUD')." ECF No. 35-1 at 2–3 (citing ECF No. 1 ¶¶ 16–17). Programs receiving HUD funding must abide by rules set forth in the Code of Federal Regulations. *See* 24 C.F.R. §§ 5.105, 5.106; ECF No. 1 ¶ 24; ECF No. 35-1 at 8–10.

Defendants set forth basic rules for women who stay overnight at Naomi's House. For example, the women must take nightly showers. ECF No. 1 ¶ 20. According to the complaint, women shower in groups during certain hours and "women [are] nude in the presence of other women." *Id.* Women then "change into their cloth[e]s [sic] and/or bed attire." *Id.*

Plaintiffs were all homeless women who sought shelter at Naomi's House at various times from "June 2017 to the present."[2] *Id.* ¶ 21. Plaintiffs allege that all Plaintiffs suffered substance abuse, mental health, psychological, physical, sexual abuse, and/or domestic violence issues. *Id.*

In approximately July 2017, D.N. sought Defendants' shelter and support. ECF No. 35-1 at 3. According to the complaint, D.N. is a transgender individual.[3] ECF No. 1 ¶ 22. D.N. was born a male, but identifies as a female. *Id.* "D.N. was allowed to stay at [Defendants'] women's shelter pursuant to HUD's Equal Access Rule that requires any facility that receives HUD funding, such as Defendants['],

---

[2] Plaintiffs filed the original complaint in California state court on April 24, 2018. ECF No. 1 ¶ 1.

[3] Plaintiffs refer to D.N. in their complaint as "a purported transgender." ECF No. 1 ¶ 22. Plaintiffs explain "[t]his Complaint refers to D.N. in the masculine since there is an issue as to whether D.N. is transgender, and the fact that D.N. retains all male genitalia." *Id.* ¶ 22 n.1. Yet Plaintiffs claim in their opposition that "the transgender status of D.N. is only tangentially related to the case." ECF No. 38 at 10. The Unruh Act defines "sex" to "include[], but is not limited to, a person's gender. 'Gender' means sex, and includes a person's gender identity and gender expression. 'Gender expression' means a person's gender-related appearance and behavior whether or not stereotypically associated with the person's assigned sex at birth." Cal. Civ. Code § 51(e)(5). Both parties' filings indicate that D.N. identifies as female. Therefore, despite Plaintiffs' questionable construction, the Court will refer to D.N. as "her."

to provide services to transgender clients based on their gender identi[t]y, *i.e.*, Defendant Naomi House (a women's shelter) provided shelter to D.N. because D.N. identifies as female." ECF No. 35-1 at 3 (citing ECF No. 1 ¶ 24; 24 C.F.R. § 5.106).

Plaintiffs state that "D.N. was allowed to shower with Plaintiffs." ECF No. 1 ¶ 22. "D.N. initially undressed and dressed in the open area, but at some point was not required to undress and dress in the open area. Rather, D.N. was allowed to wear [her] clothes into the shower stall to undress and dress." *Id.* During shower times, Plaintiffs allege D.N. "would repeatedly make lewd and sexually inappropriate comments to some of the Plaintiffs. D.N. would stare and leer at Plaintiffs while naked and make sexually harassing comments about their bodies." ECF No. 1 ¶ 22. The complaint is devoid of any specific examples of D.N.'s alleged repeat "lewd" and "sexually harassing comments about [Plaintiffs'] bodies." *See generally* ECF No. 1.

Plaintiffs further allege that "D.N. would make sexually inappropriate comments and engage in sexually harassing activities. These activities included, but are not limited to, showing some Plaintiffs pictures and/or videos of D.N. touching [herself] and masturbating. D.N. made sexual advances on some of the Plaintiffs." *Id.* ¶ 23. Plaintiffs do not specify which Plaintiffs were subject to D.N.'s purported acts. *See generally* ECF No. 1.

Plaintiffs allege they repeatedly complained verbally and in writing to Naomi's House's staff regarding D.N.'s conduct. *Id.* ¶ 24. "Plaintiffs were informed that they had to respect D.N.'s decision to identify as a woman, and that Defendant Naomi's House received HUD funding and therefore, there was nothing Defendant Naomi's House could do. If Plaintiffs refused to take showers with D.N., staff threatened them with expulsion from the House." *Id.* Plaintiffs allege Defendants "refused to take appropriate disciplinary action against D.N. or make any reasonable accommodations to protect the rights and privacy of all parties." *Id.*

Defendants' motion for partial judgment on the pleadings only relates to Plaintiffs' Unruh Civil Rights Act claim. Plaintiffs allege they were "denied, discriminated and/or distinguished against and

thereby deprived of full and equal accommodations, advantages, facilities, privileges and/or services in their housing on the basis of gender." *Id.* ¶ 31. Plaintiffs assert that they were subject to "sexual harassment and/or sex discrimination on the basis of their gender, which was a substantial motivating reason for Defendants' conduct." *Id.* ¶ 32. Plaintiffs allege "Defendants used fear and/or intimidation against Plaintiffs when they complained of wrongful conduct." *Id.*

## IV. <u>STANDARD OF DECISION</u>

Federal Rule of Civil Procedure 12(c) of the permits a party to seek judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's pleadings . . . ." *Morgan v. County of Yolo*, 436 F. Supp. 2d 1152, 1154–55 (E.D. Cal. 2006), *aff'd*, 277 F. App'x 734 (9th Cir. 2008). Therefore, a Rule 12(c) motion operates in a similar manner as a motion to dismiss under Rule 12(b)(6). *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) ("Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy") (internal quotation marks and citation omitted); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (the legal standard of review governing Rule 12(c) and 12(b)(6) motions are "functionally identical").

"A judgment on the pleadings is a decision on the merits . . . ." *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1357 (9th Cir. 1990), *cert. denied*, 500 U.S. 917 (1991). "A district court will render a 'judgment on the pleadings when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.'" *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997) (quoting *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996)); *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003) ("A motion for judgment on the pleadings should be granted where it appears the moving party is entitled to judgment as a matter of

law”).

"All allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party." *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989); *Schuett v. FedEx Corp.*, 119 F. Supp. 3d 1155, 1159 (N.D. Cal. 2016) ("A judgment on the pleadings is appropriate when the pleaded facts, accepted as true and viewed in the light most favorable to the non-moving party, entitle the moving party to a judgment as a matter of law"). A motion for judgment on the pleadings will not be granted unless it appears "beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief." *Enron Oil Trading & Transp. Co.*, 132 F.3d at 529 (quoting *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 529 (2d Cir. 1996)); *Morgan*, 436 F. Supp. at 1155.

When deciding a Rule 12(c) motion, courts may consider facts set forth in the pleadings as well as facts that are contained in materials of which the court may take judicial notice. *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (citation omitted); *see also Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (a Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts") (per curiam). Under Federal Rule of Civil Procedure 10(c), a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes and may be considered on a motion for judgment on the pleadings. *See Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002) ("materials properly attached to a complaint as exhibits may be considered" on a motion for judgment on the pleadings).

A court may grant leave to amend in response to a Rule 12(c) motion if the pleadings can be cured by further factual enhancement. *See Sprint Telephony PCS, L.P. v. San Diego*, 311 F. Supp. 2d 898, 903 (S.D. Cal. 2004) ("Because the two motions are analyzed under the same standard, a court considering a motion for judgment on the pleadings may give leave to amend and 'may dismiss causes

of action rather than grant judgment.'"); *accord Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004); *see also Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) ("We consistently have held that leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'"). If the court does grant the motion, the court, in its discretion, may grant the non-moving party leave to amend or enter a final judgment. *See Lonberg*, 300 F. Supp. 2d at 945 (citations omitted) ("[A]lthough Rule 12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to amend and to simply grant dismissal of the action instead of entry of judgment.").

# V. DISCUSSION

## A.    "Business Establishments" Under the Unruh Civil Rights Act

Defendants' primary argument for judgment on the pleadings is that Poverello House and Naomi's House are not business establishments under the Unruh Civil Rights Act. Plaintiffs counter that Defendants are business establishments, citing the broad scope of the Unruh Act's meaning of "all business establishments of every kind whatsoever." Cal. Civ. Code § 51. Neither party has cited any caselaw definitively answering whether California state and federal courts have held that homeless shelters are business establishments under the Unruh Civil Rights Act.

This is an exceedingly close call. Based on the facts of this case and the available authority regarding business establishments under the Act, the Court holds that Poverello House and Naomi's House are not "business establishments" within meaning of the Unruh Act.

California's Unruh Civil Rights Act secures equal access to public accommodations and prohibits intentional discrimination by "all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The Unruh Act specifically provides:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51.

Whether a defendant is a "business establishment" under the Unruh Civil Rights Act is a question of law. *See Rotary Club of Duarte v. Bd. of Dirs.*, 178 Cal. App. 3d 1035, 1050 (1986). The California Supreme Court has held that the term "business establishment" should be construed "in the broadest sense reasonably possible." *Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d 72, 78 (1985) (internal quotation marks omitted). The Unruh Civil Rights Act applies to an organization that is "classically 'public' in its operation," namely one that "opens its . . . doors to the entire youthful population" of a city, or a "broad segment of the population," with "no attempt to select or restrict membership or access on the basis of personal, cultural, or religious affinity, as private clubs might do." *Id.* at 81; *Whooley v. Tamalpais Union High Sch. Dist.*, -- F. Supp. 3d --, 2019 WL 3430730, *6 (N.D. Cal. July 29, 2019).

"The word 'business' embraces everything about which one can be employed, and it is often synonymous with calling, occupation, or trade, engaged in for the purpose of making a livelihood or gain." *Taormina v. Cal. Dep't of Corrs.*, 946 F. Supp. 829, 833–34 (S.D. Cal. 1996) (citing *O'Connor v. Village Green Owners Ass'n*, 33 Cal. 3d 790, 795 (1983)); *Pack v. Fort Washington II*, 689 F. Supp. 2d 1237, 1248 (E.D. Cal. 2009). An organization has sufficient businesslike attributes to qualify as a "business establishment" under the Unruh Civil Rights Act when it appears to have been operating in a capacity that is the functional equivalent of a commercial enterprise. *See Carter v. City of Los Angeles*, 224 Cal. App. 4th 808, 825 (2014). The word "establishment," as broadly defined, "includes not only a fixed location, such as the 'place where one is permanently fixed for residence or business,' but also a permanent 'commercial force or organization' or 'a permanent settled position, (as in life or business).'" *O'Connor*, 33 Cal. 3d at 795–96 (internal citations omitted); *see also Harris v. Mothers Against Drunk Driving*, 40 Cal. App. 4th 16, 22 (1995) [hereinafter "*MADD*"] (denying summary judgment regarding whether organization dedicated to helping drunk driving victims was "business establishment" under Unruh Act where record did not establish facts regarding organization's number of paid staff, whether

operation of facilities was merely incidental to maintenance of organization's objectives and programs, whether payment of dues were common, and benefits accrued to members).

Courts consider numerous factors in determining whether an organization is a "business establishment" under the Unruh Civil Rights Act, including: (1) what, if any, business benefits one may derive from membership; (2) the number and nature of paid staff; (3) whether the organization has physical facilities, and if so, whether those facilities are incidental to the purposes and programs of the organization; (4) what are the purposes and activities of the organization; (5) the extent to which the organization is open to the public; (6) whether there are any fees or dues for participation or membership; and (7) the nature of the organization's structure. *See MADD*, 40 Cal. App. 4th at 20; *Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1151–52 (C.D. Cal. 2001) (holding landlord association was not "business establishment" on summary judgment where association lacked board of directors with authority to act on members' behalves, lacked home office and paid staff, solely communicated with members by periodic newsletters, and did not charge membership dues). "Courts are not limited to inquiries from this list." *Harris*, 40 Cal. App. 4th at 20.

California courts have held that nonprofit institutions may qualify as "business establishments" under the Unruh Civil Rights Act. *See O'Connor v. Village Green Owners Ass'n*, 33 Cal. 3d 790, 796 (1983) ("Nothing in the language or history of its enactment calls for excluding an organization from its scope simply because it is nonprofit."); *Doe v. Cal. Lutheran High Sch. Ass'n*, 170 Cal. App. 4th 828, 836 (2009) ("An organization is not excluded from the scope of the Unruh Civil Rights Act simply because it is nonprofit."). The Unruh Civil Rights Act generally does not apply to private social clubs, including a private religious school that is "an expressive social organization whose primary function is the inculcation of values in its youth members," and whose admissions policies are "effectively selective based on these values." *Cal. Lutheran High Sch. Ass'n*, 170 Cal. App. 4th at 838 (internal quotation marks omitted). In other words, the Unruh Civil Rights Act "is concerned with equal access to places of public accommodation." *Whooley*, -- F. Supp. 3d --, 2019 WL 3430730, *6 (holding school district may

constitute "business establishment" under Unruh Act).

"[N]ot all actions taken by every person or group in the State of California constitutes a violation of the Unruh Civil Rights Act, and not all groups are considered business establishments." *Harrison v. City of Rancho Mirage*, 243 Cal. App. 4th 162, 173, 175 (2015) (holding city was not acting as "business establishment" where it amended existing municipal code to increase minimum age of responsible person from 21 years old to 30 years old for short-term home rentals and was not directly discriminating against anyone). An organization has sufficient businesslike attributes to qualify as a business establishment when it "appears to have been operating in a capacity that is the functional equivalent of a *commercial enterprise*." *Carter v. City of Los Angeles*, 224 Cal. App. 4th 808, 825 (2014) (holding public entity providing sidewalks and curbs to citizens acts as public servant, not commercial enterprise) (citing *Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594, 622 (1995) (emphasis added)). In analyzing *O'Connor*, the *Warfield* court noted, "[a] theme running throughout the description of the association's powers and duties is that its overall function is to *protect and enhance the project's economic value*." *Warfield*, 10 Cal. 4th at 599 (citing *O'Connor*, 33 Cal. 3d at 796) (emphasis added).

In one of the forefront cases concerning the meaning of "business establishments," the California Supreme Court held that the Boy Scouts did not constitute a business establishment under the Unruh Civil Rights Act. *See Curran v. Mt. Diablo Council of the Boy Scouts*, 17 Cal. 4th 670, 697–98 (1998). The court stated:

> The Boy Scouts is an organization whose primary function is the inculcation of a specific set of values in its youth members, and whose recreational facilities and activities are complementary to the organization's primary purpose…. [M]embership in the Boy Scouts is not simply a ticket of admission to a recreational facility that is open to a large segment of the public and has all the attributes of a place of public amusement. Scouts meet regularly in small groups (often in private homes) that are intended to foster close friendship, trust and loyalty, and scouts are required to participate in a variety of activities, ceremonies, and rituals that are designed to teach the moral principles to which the organization subscribes.

*See id.* at 687–98.

In *California Lutheran*, the court held that a nonprofit private religious high school was not a "business establishment" and thus, was not prohibited by the Unruh Civil Rights Act from discriminating in its admissions decisions despite charging students for education and engaging in nonmember transactions at sporting events. *See Cal. Lutheran*, 170 Cal. App. 4th at 839–40. The court reasoned that the school had an overall purpose and function to educate children in keeping with its religious beliefs, and nonmember transactions did not involve the sale of access to the basic activities or services offered by the school. *See id.* at 838–41. The *California Lutheran* court noted, "no prior decision has interpreted the 'business establishments' language of the Act so expansively as to include the membership decisions of a charitable, expressive, and social organization, like the Boy Scouts, *whose formation and activities are unrelated to the promotion or advancement of the economic or business interests of its members.*" *Id.* at 837 (citing *Curran*, 17 Cal. 4th at 697–98 (emphasis added)).

In *Randall v. Orange County Council*, the California Supreme Court also held the Boy Scouts were not a business establishment under the Unruh Civil Rights Act. *Randall v. Orange Cty. Council*, 17 Cal. 4th 736, 744 (1998). The *Randall* court reasoned, "Defendant not only is a charitable organization with a predominately expressive social purpose unrelated to the promotion of the economic interests of its members, but offers to its members a program that is not the equivalent of a traditional place of public accommodation or amusement." *Id.* at 744. The court further noted that despite the Boy Scouts' "limited business transactions with the public, defendant does not sell the right to participate in the activities it offers to its members." *Id.* Therefore, the court held that the Boy Scouts did not operate as a business establishment under the Unruh Civil Rights Act with respect to its membership decisions. *See id.*

In *Beltran v. County of Santa Clara*, the court dismissed plaintiffs' claims under the Unruh Act. The *Beltran* defendants argued that the County, and specifically the children's shelter in which a child was temporarily housed, was not a business establishment under the Unruh Act. *See Beltran v. Cty. of*

*Santa Clara*, No. C-03-03767-RMW, 2004 WL 7338630, *8 (N.D. Cal. July 15, 2004). The *Beltran* plaintiffs countered that the shelter was more akin to a school, which some courts have held constitute business establishments under the Unruh Act. *See id.* The court reasoned that "[a]lthough the Department of Family and Children's Services ['DCFS'] may contain staff and physical facilities, it does not accept memberships, charge fees or dues, and is not a profit-seeking institution, even assuming that it receives money for each child DFCS adopts." *Id.* Therefore, the court held that the DFCS shelter did not qualify as a business establishment and dismissed the plaintiffs' Unruh Civil Rights Act claim. *See id.*

In *Roe v. California Department of Developmental Services*, the court granted a motion to dismiss with leave to amend where the complaint failed to state enough facts showing defendant, a private nonprofit responsible for determining appropriate treatment and living arrangements for individuals with developmental disorders, was a "business establishment" under the Unruh Act. *Roe v. Cal. Dep't of Dev. Servs.*, No. 16-cv-03745-WHO, 2017 WL 2311303, *1–2 & *15–16 (N.D. Cal. May 26, 2017) ("On the current record, it is impossible to tell whether [Regional Center of the East Bay] has any of the typical features of a 'business establishment'—whether, for example, it has a board of directors, whether it has a large number of employees, whether and whom it charges fees in exchange for services, and other crucial facts are all omitted) (citing *O'Connor*, 33 Cal. 3d at 796 (finding nonprofit owners association to be a "business establishment" because it "performs all the customary business functions which in the traditional landlord-tenant relationship rest on the landlord's shoulders")); *see also Gregory v. Cty. of L.A.*, No. B251945, 2014 WL 6610198, *5 (Cal. Ct. App. Nov. 21, 2014) (holding county animal shelter was not functionally equivalent to commercial enterprise sufficient to constitute "business establishment" under Unruh Act); *McColm v. S.F. Hous. Auth.*, No. C-06-07378, 2009 WL 2901596 (N.D. Cal. Sept. 4, 2009) (holding San Francisco Housing Authority does not qualify as "business establishment" because it administers governmental housing programs to qualified participants); *Romstad v. Contra Costa Cty.*, 41 F. App'x 43, 45 (9th Cir. 2003) (affirming

holding that county social services department does not qualify as business establishment); *Carter*, 224 Cal. App. at 825 (holding public entity providing sidewalks and curbs to citizens acts as public servant, not commercial enterprise); *Hart v. Cult Awareness Network*, 13 Cal. App. 4th 777, 792–93 (1993) (affirming denial of preliminary injunction and holding cult awareness group was not "business establishment" because application of Unruh Civil Rights Act to organization would infringe members' rights to freedom of association); *Taorminia v. Cal. Dep't of Corrs.*, 946 F. Supp. 829, 834 (S.D. Cal. 1996) (holding prison does not qualify as "business" because prisoners are not engaged in a calling, occupation or trade for purposes of making a livelihood or gain). *But see Dawson v. New Life Cmty. Servs.*, No. 5:13-cv-00881-PSG, 2014 WL 2508533, *4 n.58 (N.D. Cal. June 3, 2014) (denying defendants' motion for summary judgment on Unruh Act claims, among others, holding without explanation residential drug and alcohol rehabilitation program, which also operated nonprofit emergency shelter, was "business establishment" under the Unruh Act).

### 1. Poverello House and Naomi's House Are Not Business Establishments

As noted above, courts analyze a nonexhaustive list of factors to determine whether an organization is a "business establishment" under the Unruh Civil Rights Act. *See MADD*, 40 Cal. App. 4th at 20; *Inland Mediation Bd.*, 158 F. Supp. 2d at 1151–52. The Court will analyze each factor below.

### a. What, if Any, Business Benefits May One Derive from Membership?

Courts have held that organizations whose "overall function is to protect and enhance [a] project's economic value" are "business establishments" under the Unruh Act. *O'Connor*, 33 Cal. 3d at 796; *see also Warfield*, 10 Cal. 4th at 599 (holding private golf club fell within "very broad category" of "business establishment" where club derived significant revenue from nonmembers regularly using club facilities or purchasing goods and services on premises, thereby reducing fees that members otherwise would pay to maintain facilities). *Compare with Cal. Lutheran*, 170 Cal. App. 4th at 837 ("[N]o prior decision has interpreted the 'business establishments' language of the Act so expansively as to include the membership decisions of a charitable, expressive, and social organization, like the Boy Scouts,

13

*whose formation and activities are unrelated to the promotion or advancement of the economic or business interests of its members.*") (citing *Curran*, 17 Cal. 4th at 697–98) (emphasis added).

Nothing in Plaintiffs' complaint suggests any *business* benefits that the female shelter occupants derive from membership or residence at Naomi's House. *See generally* ECF No. 1. Instead, the first sentence of Plaintiffs' opposition states, "Defendants Poverello House and Naomi's House provide meals, social services, and temporary shelter to single, homeless women in the Fresno area." ECF No. 38 at 1. "The overwhelming majority of women who receive services from [Defendants] are very vulnerable and in crisis. The majority have had substance abuse, mental health, psychological, physical, sexual abuse and/or domestic violence issues." ECF No. 1 ¶ 19. Like the Boy Scouts in *Randall*, 17 Cal. 4th at 744, where the court reasoned that the Boy Scouts was a charitable organization with a predominately expressive social purpose unrelated to the promotion of the economic interests of its members, here, "Naomi's House advertises itself as a 'gentle haven of healing for homeless women.'" ECF No. 1 ¶ 17. "It has [an] approximately 24 bed overnight shelter for single, homeless women. Each woman is to be 'served with dignity and respect.'" *Id.* Thus, none of Plaintiffs' allegations indicate Plaintiffs derived any *business* benefits from Defendants. Instead, Plaintiffs' complaint alleges that Defendants provide the necessities of life to a vulnerable, underserved segment of the population. Therefore, this factor strongly weighs in favor of a finding that Defendants Poverello House and Naomi's House are not "business establishments" under the Unruh Act.

### b. The Number and Nature of Paid Staff

Plaintiffs argue in their opposition that "Defendants had a staff of employees and agents that carried out the function of providing meals, social services and shelter to women in the Fresno area . . . . Defendants hired, supervised, managed and controlled their employees and agents." Nothing in Plaintiffs' complaint attempts to describe the number and nature of Defendants' paid staff. However, given that discovery has not commenced and Plaintiffs may not have sufficient information to plead such specific facts, the Court will analyze the remaining *MADD* factors.

### c.  Whether Defendants have Physical Facilities, and if so, Whether Those Facilities are Incidental to the Organization's Purposes and Programs

Plaintiffs liken Poverello House to a business establishment because it operates a large facility. ECF No. 1 ¶ 16. Courts are split as to whether operation of a large facility indicates a business establishment. For example, the appellate court in *California Lutheran* expressly rejected this type of argument. *See Cal. Lutheran*, 170 Cal. App. 4th at 841 ("Finally, plaintiffs cite the School's 'complex structure,' 'large staff,' 'large income and budget,' and 'extensive physical facility.' The Boy Scouts of America, however, has, if anything, a more complex structure, a larger staff, a bigger budget, and a more extensive physical facility, yet these factors evidently did not make it a business."). In contrast, the *Harris* court noted it was one factor a court could consider when determining whether an organization was a business establishment. *See MADD*, 40 Cal. App. 4th at 20; *see also Inland Mediation Bd.*, 158 F. Supp. 2d at 1151–52.

Plaintiffs allege that Poverello House "operates a large facility located at 412 F Street where it provides a majority of [its] [sic] services." ECF No. 1 ¶ 16. Naomi's House has an approximately 24-bed overnight shelter for single, homeless women. *Id.* ¶ 17. For the purposes of this analysis, the Court must assume this fact to be true and construe it in a light most favorable to Plaintiff by assuming a 24-bed shelter is a "large facility." However, given that courts are split as to whether operation of a large facility indicates that an organization is a business establishment, the legal import of this assumption is debatable. Accordingly, the Court treats this factor as equivocal and turns to the remaining factors.

### d.  The Purposes and Activities of the Organizations

The California Supreme Court has "stressed that the [Unruh Act] was intended to include those kinds of recreational facilities traditionally deemed 'accommodations' [and] . . . [has] not suggested that noncommercial groups which do not operate such facilities are covered 'business establishments.'" *Curran*, 17 Cal. 4th at 670 (quoting *Isbister*, 40 Cal. 3d at 81 n.8) (emphasis omitted). The *Curran* court further highlighted the distinction between organizations like the Boy Scouts and recreational facilities

like those in *Isbister*. In *Isbister*, a recreational facility rejected female membership or access to its programs on the basis of sex. *See Isbister*, 40 Cal. 3d at 77. The Boys' Club facility had a swimming pool, gym, snack bar, and craft and game areas, qualifying it as a place of public amusement. *See Isbister*, 40 Cal. 3d at 77, 83. The Boys' Club's "primary function" was "to operate a permanent physical plant offering established recreational facilities which patrons may use at their convenience during the hours the Club is open." *Id.* at 81. Rejecting the Boys' Club argument that its facilities were unsuitable for girls, or that inclusion of both sexes in its programs would diminish the programs' value or effectiveness and endanger the Club's funding or relationship with its national organization, the court held the Boys' Club was a "business establishment" under the Unruh Act. *See id.* at 76.

"Unlike membership in the Boys' Club of Santa Cruz, Inc., membership in the Boy Scouts is not simply a ticket of admission to a recreational facility that is open to a large segment of the public and has all the attributes of a place of public amusement." *Curran*, 17 Cal. 4th at 697–98 (citing *Isbister*, 40 Cal. 3d at 84 n.14). The court emphasized that the Boy Scouts was "an organization whose primary function is the inculcation of a specific set of values in its youth members, and whose recreational facilities and activities are complementary to the organization's primary purpose." *Curran*, 17 Cal. 4th at 697–700.

The reasoning of the *Curran* court is persuasive here. Whereas in *Isbister* the Boy's Club was a "business establishment" in part because its purpose was to provide a place of public amusement and its facilities and activities embodied that purpose, 40 Cal. 3d at 77, 81, 83, 89, nothing in the pleadings indicates that the purpose of Poverello House and/or Naomi's House is to provide a place for the general public. *See generally* ECF Nos. 1, 4, 35, 38 & 40. Instead, Poverello House and Naomi's House provide services essential to daily life, including "meals, social services, and temporary shelter to single, homeless women in the Fresno area." ECF No. 38 at 1. Indeed, "Naomi's House advertises itself as a 'gentle haven of healing for homeless women,'" many of whom suffer from "substance abuse, mental health, psychological, physical, sexual abuse and/or domestic violence issues." ECF No. 1 ¶¶ 17, 19.

The record sufficiently demonstrates that Defendants' purpose is to provide refuge to women in need. *See, e.g.*, ECF No. 1 ¶¶ 16–19. Accordingly, the factor weighs in favor of a finding that Poverello House and Naomi's House are not "business establishments" under the Unruh Act.

### e. Extent to which Defendants Are Open to the Public

In the complaint, Plaintiffs allege Naomi's House has a 24-bed overnight shelter for single, homeless women in the Fresno area. ECF No. 1 ¶¶ 16–17; *see also* ECF No. 38 at 1. Plaintiffs appear to broaden their argument in the opposition and assert that "Defendants provide a service and housing to *members of the public.*" ECF No. 38 at 10 (emphasis added).

As noted above, the California Supreme Court in *Isbister* held a boys-only club was a "business establishment" under the Unruh Act because it was "classically 'public' in its operation," namely one that "*opens its . . . doors to the entire* [male] *youthful population*" of a city, or a "*broad segment of the population,*" with "no attempt to select or restrict membership or access on the basis of personal, cultural, or religious affinity, as private clubs might do." *Isbister*, 40 Cal. 3d at 81 (emphasis added). Here, however, the pleadings indicate that Defendants offer life-saving services to a segment of the population (*i.e.*, enough to fill 24 beds), and in particular, a vulnerable segment of the population who have suffered substance abuse, mental health, psychological, physical, sexual abuse, and/or domestic violence issues. ECF No. 1 ¶ 19. Therefore, this case is distinguishable from *Isbister* where the boys-only club opened its recreational doors to all male youth of Santa Cruz. *Isbister*, 40 Cal. 3d at 81, 89; *see also Randall*, 17 Cal. 4th at 744 (Boy Scouts was a charitable organization with a predominately expressive social purpose unrelated to the promotion of the economic interests of its members, but offers to its members a program that is not the equivalent of a traditional place of public accommodation or amusement). Accordingly, this factor weighs in favor of a finding that Defendants are not "business establishments" under the Unruh Act.

### f. Fees or Dues for Participation or Membership

Nothing in the Plaintiffs' complaint demonstrates that Defendants charge the guests for the

meals, social services, and temporarily shelter that Defendants provide. *See generally* ECF No. 1.

Instead, Plaintiffs allege that Defendants receive federal grants and funding through HUD. *See id.* ¶¶ 16–17.

Like in *Roe*, where the court held that a plaintiff failed to plead sufficient facts to establish that a private, nonprofit developmental center was a "business establishment" under the Unruh Act, here, Plaintiffs' complaint omits crucial facts like whether they were required to pay any fees in exchange for Defendants' services. *Roe v. Cal. Dep't of Dev. Servs.*, No. 16-cv-03745-WHO, 2017 WL 2311303, *2 & *15–16. Similarly, like in *Beltran*, where the court held a child services organization was not a "business establishment" where it did not charge fees or dues, and was not a profit-seeking institution despite an assumption of receiving money for each child adopted, here, nothing in the complaint demonstrates Plaintiffs were charged fees or dues to stay at Defendants' women's shelter. *See Beltran*, No. C-03-03767-RMW, 2004 WL 7338630, *8. Nor is there any indication that Defendants or Plaintiffs are "engaged in anything 'synonymous with calling, occupation or trade, engaged in for the purpose of making a livelihood or gain.'" ECF No. 35-1 at 7 (citing *Taorminia*, 946 F. Supp. at 834). In other words, the complaint lacks any allegations demonstrating Defendants operate in a capacity that is the functional equivalent of a commercial enterprise. Therefore, this factor weighs strongly in favor of a conclusion that Defendants are not "business establishments" under the Unruh Act.

### g.     Nature of the Organizations' Structure

Poverello House "is an organization that provides meals, social services, and temporary shelter to people in the Fresno area." ECF No. 1 ¶ 16. Naomi's House is a "24 bed overnight shelter for single, homeless women." *Id.* ¶ 17. Plaintiffs believe Poverello House operates Naomi's House. *Id.* ¶ 16. Plaintiffs argue their relationship with Defendants was analogous to a landlord-tenant relationship, which courts have held are indications that organizations are "business establishments" under the Unruh Act. *See* ECF No. 38 at 8–9. In support of this argument, Plaintiffs assert they were "effectively the Plaintiffs' landlord" because Defendants "were entities licensed to do business and doing business" in

California; "Defendants provided meals, social services and temporary shelter to women in the Fresno area"; "Defendants operated out of a large facility located at 412 F Street"; "Defendants had a staff of employees and agents that carried out the function of providing meals, social services and shelter to women"; and "Defendants hired, supervised, managed and controlled their employees and agents." ECF No. 38 at 9.

The Court rejects Plaintiffs' argument that the relationship between Plaintiffs and Defendants is akin to that between a landlord and tenants. Plaintiffs cite two cases regarding rental units qualifying as business establishments. *See Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721, 731 (1982) (noting courts have held the Unruh Act to apply with "full force *to the business of renting housing accommodations*") (emphasis added); *O'Connor*, 33 Cal. 3d at 796 (holding homeowners' association's actions of employing property management firm, obtaining insurance, repairing common areas, and collecting assessments to enhance property value were traditional landlord-tenant business functions sufficiently indicating "business establishment"). Neither are relevant to the instant case where there are no facts showing that the shelter's occupants paid to stay at Naomi's House or Defendants took actions to enhance the shelter's property value. This factor weighs in favor of a finding that Defendants are not "business establishments" within meaning of the Unruh Act.

The Court recognizes Plaintiffs' emphasis on the "broad and expansive scope" of the term "business establishments" under the Unruh Act. *See* ECF No. 38 at 5–7. Plaintiffs are correct in arguing that the Unruh Act's use of the phrase "all business establishments of every kind whatsoever" indicates the Legislature's intent for the scope of the Unruh Act to be broad. *See id.* at 6–7. "To further illustrate the broad scope of the term 'business establishment,'" Plaintiffs cite caselaw where courts have held that public school districts qualify as "business establishments" under the Unruh Act. *See* ECF No. 38 at 8 (citing *Whooley*, -- F. Supp. 3d --, 2019 WL 3430730, *7 (holding school district could be business establishment under Unruh Civil Rights Act); *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107 (E.D. Cal. 2011) (same); *Nicole M. By and Through Jacqueline M. v. Martinez Unified Sch. Dist.*,

964 F. Supp. 1369 (N.D. Cal. 1997) (same)).

In *O'Connor*, the California Supreme Court held that a homeowners' association was a business establishment under the Unruh Civil Rights Act. *See O'Connor*, 33 Cal. 3d at 796. Despite its nonprofit status, the court analyzed the activities of the association's board of directors, which included employing a professional property management firm, obtaining insurance for the benefit of all owners, maintaining and repairing all common areas, and collecting assessments from owners. *See id.* The court concluded those activities were comparable to a landlord and were undertaken to enhance property value for the association members. *See id.* Therefore, the court held the homeowners' association fell within the broad ambit of "all business establishments of every kind whatsoever" under the Unruh Civil Rights Act. *See id.* As discussed in detail above, nothing in the pleadings demonstrates that Defendants operated to enhance the economic value of their organizations or the shelter's occupants. Moreover, nothing in the pleadings demonstrates a landlord-tenant relationship like that in *O'Connor*.

Yet, as the above discussion of the numerous cases involving nonprofit, charitable organizations, the expansive scope of "business establishments" is not without limits. *See Curran*, 17 Cal. 4th at 697–98 ("no prior decision has interpreted the 'business establishments' language of the Act so expansively as to include the membership decisions of a charitable, expressive, and social organization, like the Boy Scouts, *whose formation and activities are unrelated to the promotion or advancement of the economic or business interests of its members*." (emphasis added)).

In sum, while the Court understands the broad scope of "business establishments" under the Unruh Act, the relevant caselaw does not support the conclusion that Defendants Poverello House and Naomi's House in this matter are "business establishments" based on Plaintiffs' complaint.

### h. Regulatory Requirements for Operating in California

The *MADD* court noted the nonexhaustive nature of its list of factors regarding whether an organization is a "business establishment" under the Unruh Act. *See MADD*, 40 Cal. App. 4th at 20; *Inland Mediation Bd.*, 158 F. Supp. 2d at 1151–52. Therefore, the Court will analyze Plaintiffs'

additional argument regarding whether Defendants are business establishments. "Plaintiffs specifically allege that Defendants 'were entities licensed to do business and doing business' in California." ECF No. 38 at 9 (emphasis omitted). In their answer, Defendants "admit[ed] they are corporations 'licensed to do business and is doing business . . .' in the State of California." ECF No. 38 at 9. In response, Defendants argue that California's regulatory scheme requiring Defendants to satisfy certain requirements to "do business" in California does not equate to "business establishments" under the Unruh Act. ECF No. 40 at 9. Neither party cites any authority for these arguments.

Every nonprofit in California must register with the State of California. *See* Cal. Gov't Code § 12585; *see also* 2 Marilyn E. Phelan, Nonprofit Organizations: Law & Taxation § 13.9 n.1 (2d ed. 2019). The California Code designates three types of nonprofit corporations: the public benefit corporation, the mutual benefit corporation, and the religious corporation. *See* 2 Marilyn E. Phelan, Nonprofit Organizations: Law & Taxation § 1:17. Most of the registered nonprofit corporations in California are organized as public benefit corporations. *See* Cal. Dep't of Justice, Attorney General's Guide for Charities: Best practices for nonprofits that operate or fundraise in California at 3 (2019), https://oag.ca.gov/sites/all/files/agweb/pdfs/charities/publications/guide_for_charities.pdf. Here, Poverello House and Naomi's House are 501(c)(3) nonprofit corporations. *See* ECF No. 4-2 at 1. If taking the corporate form was dispositive as Plaintiffs suggest, then cases like *Curran* and *Randall* would have had entirely different outcomes. Defendants' "admission" in its answer appears to be a technicality at most. Based on the Court's review of the caselaw on "business establishments" under the Unruh Act, and noting the lack of analyses on a hyper-technical answer relating to an organization's ability to operate in California, the Court will not hold that this technicality is sufficient to qualify Defendants as "business establishments."

In considering the totality of the *MADD* factors, as well as the extensive review of relevant caselaw and the parties' briefing, the Court holds that Poverello House and Naomi's House are not "business establishments" under the Unruh Act.

# VI. <u>CONCLUSION AND ORDER</u>

For the reasons discussed above, Defendants' motion for partial judgment on the pleadings as to Plaintiffs' Unruh Act claim is GRANTED with leave to amend. Plaintiffs shall have 21 days to amend the Unruh Act claim or file a notice informing the Court that they will not seek to amend the Unruh Act claim. Providing more time to amend is NOT an invitation. The opportunity to amend should only be acted upon if, based on the parameters and findings of this Order, the claim can actually and lawfully be pled.

IT IS SO ORDERED.

Dated:   **October 30, 2019**                **/s/ Lawrence J. O'Neill**
                                        UNITED STATES CHIEF DISTRICT JUDGE